THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
EGBERT PALMER, Appellant.

Under the provisions of the Code of Criminal Procedure (§§ 464, 543), pro--
viding that, in case of reversal on appeal by the defendant from a judg-
ment in a criminal action, the court may, "if necessary or proper, order
a new trial " (§ 543); that " the granting of a new trial places the parties.
in the same position as if no trial had been had " (§ 464), and that when
a new trial is ordered it shall proceed in all respects as if no trial had
been had (§ 544), where a defendant is convicted of a lower degree
of the crime charged in the indictment, and on his appeal upon
exceptions the judgment is reversed and a new trial ordered, the case
stands as if there had been no trial, and the defendant must be tried under·
the indictment as it is, not simply for the lesser grade of the crime of
which he was convicted.

Said provisions, as so construed, are not violative of the constitutional inhi-
bition (state Const. art. **1**, § **6**) against subjecting a person to be twice
put in jeopardy for the same offense, as the jeopardy is incurred with
the consent of, and as a privilege granted to, the defendant upon his.
application.

Where, therefore, defendant, on trial by a Court of Sessions upon an
indictment for assault in the first degree, was convicted of an assault
in the third degree, and upon his appeal the judgment was reversed
on questions of law only, a new trial ordered and the case remitted
to the Court of Sessions, and thereupon he appealed to this court
from so much of the judgment as ordered a new trial, and remanded
the case, on the ground that he could only be retried for the offense
of which he was convicted, and of this, the Court of Sessions had no
jurisdiction. *Held*, untenable; that the jurisdiction of said court was.
not affected, and the case stood as if there had been no trial.

(Submitted April 12, 1888, decided June 5, 1888.)

APPEAL from portions of an order of the General Term of
the Supreme Court in the third judicial department, made
November 16, 1886, which affirmed a judgment of the Court
of Sessions of the county of Greene, convicting the defendant
of the crime of assault in the third degree; also, appeal from
order of said General Term made May 3, 1887.

The defendant was indicted in December, 1885, for an
assault in the first degree, at the Greene county Oyer and
Terminer, and was tried before the Court of Sessions. He·

was convicted of an assault in the third degree and on appeal the General Term reversed the judgment on questions of law only, and ordered a new trial, remanding the action to the Court of Sessions for further proceedings. From the General Term judgment the defendant appealed, so far as it ordered a new trial, and remitted the action to the Court of Sessions. The order of the General Term, which was appealed from, denied defendant's motion to amend its order of reversal, etc., so as that it should state that defendant's application to be discharged on the reversal of the judgment was denied; that the defendant did not, upon his appeal, ask for a new trial, and that the new trial is granted only as to an assault in the third degree.

*Sidney Crowell* for appellant. The Court of Oyer and Terminer had no jurisdiction to indict or try the defendant for an alleged assault in the third degree, and did not do so; and the Court of Sessions has no jurisdiction if the Oyer and Terminer had none. (Code of Criminal Procedure, §§ 21, 22, 56, 57.) Sections 444 and 445 of the Code of Criminal Procedure, and sections 35 and 36 of the Penal Code, are merely an enactment of the common-law rule. They are rules of pleading and practice, not of jurisdiction of courts. (*People* v. *Jackson,* 3 Hill, 92; *Lohman* v. *People,* 1 N. Y. 379; *Dedieu* v. *People,* 22 id. 184; *Hunter* v. *Com.,* 79 Penn. 503; 21 Am. R. 83; 1 Whart. Crim. Law, § 560; 1 Bish. Crim. Law [3d. ed.] §§ 886, 887: 1 Arch. Crim. Pl. 93.) These provisions are subject to the rule that the court must have jurisdiction in order to try and convict for such crime. (*Dedieu* v *People,* 22 N. Y. 178; *Keefe* v. *People,* 40 id. 348; *People* v *Saunders,* 4 Park. 196.) No greater punishment can be imposed by a Court of Special Sessions than is provided in section 717 of the Code of Criminal Procedure. (*People* v. *Risley,* 38 Hun, 280.) If a court has no jurisdiction to convict, an acquittal cannot be a bar to a subsequent prosecution in another court of competent jurisdiction. (Bish. Crim. L. [3d. ed.] § 866; 1 Whart. Crim. L. § 541; Code Criminal

Pro. §§ 340, 402.) It was not proper to order a new trial even if the court had jurisdiction of assault in the third degree on the first trial, and the defendant should have been discharged. (Code Crim. Pro. §§ 543–545; *People* v. *Downing,* 84 N. Y. 478; *Guenther* v. *People,* 24 id. 100; *Johnston* v. *State,* 29 Ark. 31; 21 Am. R. 154; 1 Green. Crim. Law R. 406, note; 5 N. Y. Crim. R. 115, note.)

*Frank H. Osborn* for respondent. When a new trial is ordered after reversal on appeal, it shall proceed in "all respects as if no trial had been had." (*People* v. *Gibbs,* 93 N. Y. 470; Code of Crim. Pro. § 544.) If the defendant was to be held for retrial, as upon an indictment charging assault in the third degree only, it is doubtful whether such a course would not amount to a trial under indictment "in the first instance" of an offense which is not within the jurisdiction of the Sessions or Oyer and Terminer "in the first instance." (Code of Crim. Pro. §§ 56, 57.) Conviction of that offense may be had in either court mentioned under the indictment as it now stands. (*People* v. *McTameney,* 30 Hun, 505; *People* v. *Kelly,* 97 N. Y. 212.) The defense of a former acquittal cannot be raised except under a plea entered in the trial court setting forth the judgment of acquittal, and evidence offered by the defendant to sustain such plea may be possibly overcome by the prosecution on the trial. (Code of Crim Pro. §§ 332, 341.)

Gray, J. The appellant contends that as he was convicted of assault in the third degree he was thereby acquitted of assault in the higher degrees, and cannot be again tried under the indictment, and that, upon the reversal of the judgment of conviction, there was nothing left but a charge of assault in the third degree; of which charge the Oyer and Terminer had not jurisdiction. While that court had jurisdiction of the offense charged in the indictment, a charge of assault in the third degree seems exclusively cognizable, in the first instance, by the Court of Special Sessions, except a certificate that it

should be prosecuted by indictment be allowed by the county judge or a Supreme Court justice. (See Code of Crim. Pro. §§ 21, 22, 56, 57.)

The question brought before us by this appeal is whether, when the defendant, having been found guilty and sentenced for a lower degree of the crime charged in the indictment, has appealed to the Supreme Court upon exceptions, and has succeeded in reversing the judgment, and a new trial is ordered, and the cause remanded to the trial court for further proceedings, he can be tried again under the indictment without regard to the former trial and conviction. Can he plead them in bar of another trial for the offense charged in the indictment? The question is of the gravest importance to the administration of justice under the laws of this state, which provide for the punishment and trial of offenders. It involves the construction and validity of certain sections of the Penal Code and of the Code of Criminal Procedure, which were enacted by the legislature in respect of appeals and new trials. If the reasoning of the prisoner's counsel is correct, then the defendant's appeal, based on errors excepted to upon his trial, must result, where not in affirmance, in his discharge. And in all other cases the prisoner would take his appeal from a judgment of conviction of a lesser degree of the crime charged, with the assurance that if he could secure a reversal of the judgment and a new trial, he could not fare worse than before in any event. He would risk nothing and he might wholly escape punishment for the offense of which he stood charged.

Whatever conflict of opinion existed in the courts, prior to the adoption of the Code of Criminal Procedure, as to a prisoner's position upon a new trial being ordered, we hold has been settled and removed by the passage of that act of the legislature. Much of the doubt and confusion surrounding the question as to the effect of a new trial seems due to a mistaken view of the operation of the constitutional inhibition against subjecting a person to be twice put in jeopardy for the same offense. (Const. of N. Y. art. 1, § 6.) That provision has been the subject of much discussion in the reports and in text

books. To enter into it I do not believe to be necessary to the end we have in view in deciding this case upon principle and in construing the statute. Its incorporation into the federal Constitution and into the Constitutions of States was but the recognition and the application, in a stronger form of expression, of the common-law doctrine. In my opinion, nothing has been done in the legislative enactment of the sections of the Code under consideration, to subvert the constitutional provision. That provision in nowise has the effect of restricting the power of the legislature to enact rules of procedure in criminal cases ; so long as the enactment does not violate the protection guaranteed by it to a party.

In *Kring* v. *Missouri* (107 U. S. 221), it was held that any law passed after the commission of an offense, which, in relation to that offense or its consequences, alters the situation of a party to his disadvantage, was an *ex post facto* law. It was said by Mr. Justice MILLER that the law of Missouri was that when a conviction was had of murder in the second degree, on an indictment charging murder in the first degree, if the conviction were set aside the defendant could not again be tried for murder in the first degree. He added, at page 225, as follows : " There is no question of the right of the state of Missouri, either by the fundamental law or by an ordinary act of legislature, to abolish this rule, and that it is a valid law as to all offenses committed after its enactment. The question here is, does it deprive the defendant of any right of defense which the law gave him when the act was committed, so that as to that offense it is *ex post facto.*" In that case the Constitution of Missouri was amended after the homicide. It abrogated the old rule and provided that when a conviction for a lower degree of the crime upon an indictment for a higher was lawfully set aside, the conviction for the lower degree did not operate as an acquittal of the higher. After the amendment went into effect the defendant's plea of murder in the second degree was made. He was sentenced to twenty-five years imprisonment. That sentence was set

aside and he was tried again, and, against his protest and refusal to plead over, was convicted of murder in the first degree.

It was on those facts that the United States Supreme Court held the constitutional amendment *ex post facto* as to the defendant, but the right of the state was recognized to abolish a previously existing rule as to commission of crimes, and the trial of the person charged with the commission, and to create a new rule of procedure.

The condition and rights of a person tried and convicted for the commission of a crime have been frequently the subject of legislation. The right to review by writ of error or by appeal did not belong to the prisoner at common law. Until the third of Queen Anne a writ of error in any criminal case was held to be merely *ex gratia*. In the *Aylesbury Case* (2 Salk. 503) arising in that year, it was held that it must be granted, *ex debito justitiæ*, except in cases of treason or felony. But Lord Mansfield said (4 Burr. 2550) in respect of that decision, that it meant the writ should be granted where there was a probable error, and that " it cannot issue now without a fiat from the attorney-general, who always examines whether it be sought merely for delay or upon probable error." In 1801 it was enacted by the legislature of this state that writs of error in criminal cases, not capital, shall be considered as writs of right and issue of course, subject to the regulations provided by law. (Laws of 1801, chap. 25.) The law continued thus as to writs of error until the adoption of the Revised Statutes, when the remedy by bill of exceptions was extended to criminal cases in the same cases and in the like manner as in civil cases. It was then provided that in the trial of any indictment exceptions to any decision of the court may be made by the defendant and a bill thereof shall be settled and filed and returned upon a writ of error or upon a *certiorari*. (2 R. S. [Edmd's ed.] 736, § 21.) By the adoption of the Code of Criminal Procedure writs of error and of *certiorari* in criminal actions were abolished, and thereafter the only mode of reviewing a judgment or order in a criminal action was by appeal, which may be taken as a matter of right by

the defendant from the judgment of conviction. (Code of Crim. Pro. §§ 515, 517, 520.)

Section 36 of the Penal Code provided that " where a prisoner is acquitted or convicted upon an indictment for a crime consisting of different degrees, he cannot thereafter be indicted or tried for the same crime in any other degree," etc., but that section has reference only to cases where the prior judgment of conviction has remained unreversed. This is made evident from a reading of the sections of the Code of Criminal Procedure  They serve to show plainly that the legislature contemplated no such result as is claimed by the appellant's counsel in the event of a new trial being ordered upon a judgment reversing the judgment of conviction. Section 455 of that Code preserved to the defendant his right, which previously existed, to take exceptions to a decision of the court upon a matter of law, by which his substantial rights are prejudiced. Section 543 provides that " upon hearing the appeal the appellate court * * * must either reverse or affirm the judgment appealed from, and in cases of reversal may, if necessary or proper, order a new trial." Section 464 provides that " the granting of a new trial places the parties in the same position as if no trial had been had ; " and by section 544 it is provided that " when a new trial is ordered it shall proceed in all respects as if no trial had been had."

These provisions of the statute are clear and explicit, in nowise contravene the letter or the spirit of the fundamental law, and their meaning should not be perverted. It would be a grievous miscarriage of justice, and the intent of the law would be thwarted if it should be held that a reversal, upon a prisoner's appeal for errors of law upon his trial, had the effect of putting it out of the power of the People to further try him under the indictment, when his guilt might be competently established. We do not think such is the result. The effect of the defendant's appeal is merely to continue the trial under the indictment in the appellate court ; and if reversal of the judgment of conviction follows, that judgment, as well as the

record of the former trial, have been annulled and expunged by the judgment of the appellate court, and they are as though they never had been; while the indictment is left to stand as to the crime, of which the prisoner had been charged and convicted, as though there had been no trial. Only where the result of the former trial was, in effect, an acquittal of another crime charged in the indictment may he plead that result in bar of further prosecution for that crime.

If the defendant takes an appeal from the judgment of conviction, he must be deemed to ask for a correction of errors made upon his trial, and to waive his constitutional protection. Of necessity, he must be deemed to ask for a new trial. By taking the appeal to the Supreme Court, power is conferred upon that court to continue and review the prisoner's trial, and, upon a reversal, to pronounce final judgment as it deems just, within the terms of the statute. It may affirm the proceedings below or reverse, and either order a new trial or discharge the prisoner. That no constitutional right of the party is invaded must be a self-evident proposition, for it is a privilege which is granted of which he may, but not must, avail himself. I think that the sounder doctrine which recognizes a distinction between jeopardy incurred with the consent of the prisoner and jeopardy incurred without that consent.

We hold the jurisdiction of the Oyer and Terminer to try the defendant again under his indictment is not affected. The offense charged was within its jurisdiction, and the judgment of the trial court having been reversed for errors committed on the trial, the case stands as though there had been no trial. The record is expunged and there is no determination in regard to the matter but the judgment of the appellate court. The defendant must go back and stand his trial under the indictment as though he had never been tried, for he himself has removed the bar which was effective to prevent his further trial for the offense charged.

The judgment appealed from should be affirmed.

All concur.

Judgment affirmed.